
COOLEY LLP
JOHN C. DWYER (136533) (dwyerjc@cooley.com)
PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
SARAH M. LIGHTDALE (4395661) (slightdale@cooley.com)
CLAIRE A. MCCORMACK (241806) (cmccormack@cooley.com)
SAMANTHA A. KIRBY (307917) (skirby@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Defendants
NVIDIA CORPORATION,
JENSEN HUANG, COLETTE KRESS,
and JEFF FISHER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re NVIDIA CORPORATION SECURITIES LITIGATION<br><br>This Document Relates to: All Actions. | Case No. 4:18-cv-07669-HSG<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE CERTAIN ALLEGATIONS IN PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: October 15, 2020<br>Time: 2:00 p.m.<br>Place: Courtroom 2<br>Judge: Hon. Haywood S. Gilliam, Jr. |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' NOTICE OF MOTION AND MOTION TO
STRIKE ALLEGATIONS IN PLAINTIFFS' FAC
CASE NO. 4:18-CV-07669-HSG

**NOTICE OF MOTION AND MOTION TO STRIKE**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 15, 2020, at 2:00 p.m., or as soon thereafter as this Motion may be heard, defendants NVIDIA Corporation ("NVIDIA" or the "Company"), Jensen Huang, Colette Kress, and Jeff Fisher (collectively "Defendants") will and hereby do move to strike the following allegations attributed to Former Employee 5 ("FE-5") in Plaintiffs' First Amended Complaint ("FAC") pursuant to Rule 12(f) of the Federal Rules of Civil Procedure:

1. Last sentence of paragraph 37, which states: ***"FE 5 . . . presented GeForce sales data to Huang personally during one of Huang's multiple visits to India."*** In addition, all other references throughout the FAC that are based upon this allegation. (¶¶ 91, 222, 236.)

2. Third sentence of paragraph 82, which states: ***"'[S]ell-in/sell-out' data recorded sales throughout the distribution chain and allowed NVIDIA to determine the percentage of GeForce GPUs sold to crypto-miners."*** In addition, all other references throughout the FAC that are based upon this allegation. (¶¶ 9, 10, 13, 43, 78, 89, 99, 219, 220.)

3. Second sentence of paragraph 91, which states: ***"FE 5 recalled personally presenting sales data to Huang at a meeting in 2017, attended by approximately ten others."*** In addition, all other references throughout the FAC that are based upon this allegation. (¶¶ 37, 222, 236.)

4. First sentence of paragraph 105, which states: ***"FE 5 confirmed that the GeForce Experience software informed NVIDIA about how GeForce GPUs were being used, including when they were being used for mining."*** In addition, all other references throughout the FAC that are based upon this allegation. (¶¶ 9, 13, 99, 102, 108, 178, 182, 186, 189, 192, 195, 198, 202, 206, 209, 212, 215, 219, 224.)

5. Last sentence of paragraph 105, which states: ***"FE 5 stated that NVIDIA knew the percentage of GeForce GPU sales going to miners by examining the GeForce Experience data."*** In addition, all other references throughout the FAC that are based

|   |   |
|---|---|
| 1 | upon this allegation.  (¶¶ 9, 13, 99, 102, 108, 178, 182, 186, 189, 192, 195, 198, 202, |
| 2 | 206, 209, 212, 215, 219, 224.) |

6. Fourth sentence of paragraph 106, which states: ***"FE 5 stated that the usage data contained in these reports showed that over 60% of GeForce GPU sales during the Class Period were to miners."***  In addition, all other references throughout the FAC that are based upon this allegation.  (¶¶ 9, 13, 99, 108, 178, 182, 186, 189, 192, 195, 198, 202, 206, 209, 212, 215, 219, 224.)

This Motion is based on the pleadings; Defendant's Memorandum of Points and Authorities; the Declaration of Claire A. McCormack and exhibits thereto; and other matters as may be presented to this Court at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Federal securities class actions have unique and heightened pleading requirements under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  15 U.S.C. § 78u, et seq.  To clear the PSLRA's Congressionally-mandated pleading hurdles, plaintiffs often rely on statements attributed to one or more confidential witnesses, typically referred to as "CWs", though referred to as Former Employees or "FEs" in the FAC.  When they do, the Ninth Circuit is clear that, before relying on those statements in analyzing a motion to dismiss, courts must first determine whether the CW allegations are sufficiently reliable to warrant consideration.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).  Unfortunately, CWs may be misquoted—either through innocent mistake or intentional misrepresentation—causing the allegations attributed to them in a complaint to be false or misleading.  *See e.g., City of Livonia Emps.' Ret. Sys. and Local 295/Local 851, IBT Emp'r Grp. v. Boeing Co.*, 711 F.3d 754, 762 (7th Cir. 2013).  Where a confidential witness disavows such misrepresentations, they are unreliable, and the court should strike them from the complaint.  *See e.g.*, Fed. R. Civ. P. 12(f); *Campo v. Sears Holdings Corp.*, 371 F. App'x. 212, 216–17 & n.4 (2d Cir. 2010); *Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1038 (N.D. Cal. 2012).

This Court dismissed Plaintiffs' first complaint for, among other things, failure to allege falsity and scienter, and for the lack of any allegations showing that a speaker was aware of facts that rendered

any public statements false or misleading when made. Now, in their First Amended Complaint ("FAC"), Plaintiffs are trying to cure that defect by attributing several allegations to a newly identified confidential witness—FE-5. FE-5, however, has signed a declaration, under penalty of perjury, stating that he did not make the key statements attributed to him in the FAC. (Those statements are set forth above.) Moreover, Plaintiffs never provided FE-5 an opportunity to review the accuracy of the statements attributed to him in the FAC before it was filed. And even when Defendants notified Plaintiffs that FE-5 had disavowed key statements in the FAC, Plaintiffs refused to withdraw them.

To be clear, as set forth in Defendants' concurrently-filed Motion to Dismiss, the FAC fails to state a claim and should be dismissed, even if the Court were to consider the allegations attributed to FE-5. (Indeed, the Motion to Dismiss assumes that the Court will consider the allegations attributed to FE-5.) Nevertheless, Defendants bring this motion because neither the Defendants nor the Court should be required to analyze a federal securities fraud complaint based upon discredited factual allegations. Because FE-5 denies the key allegations attributed to him, they are unreliable and immaterial and should be stricken. Accordingly, Defendants respectfully move this Court to strike the false and misleading allegations attributed to FE-5 from the FAC under Federal Rule of Civil Procedure 12(f).

## II.   BACKGROUND

On June 21, 2019, Plaintiffs filed a Consolidated Class Action Complaint ("CAC") alleging violations of sections 10(b) and 20(a) of the Securities Exchange Act. (Dkt. No. 113.) Plaintiffs claim that Defendants knew, but inexplicably concealed, that many of the GeForce chips NVIDIA sold to channel customers in 2017 and 2018 were eventually purchased by miners. (*See id*. ¶¶ 147–48.) The Court granted Defendants' motion to dismiss Plaintiff's CAC on March 16, 2020 with leave to amend. *Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*, 2020 WL 1244936 (N.D. Cal. Mar. 16, 2020) (hereinafter "Order"). In dismissing the CAC, the Court held, in part, that none of the statements attributed by Plaintiffs to the four FEs cited in the CAC met the requisite pleading standard or were indicative of scienter. *Id*. at *10. On May 13, 2020, Plaintiffs filed the FAC, including, for the first time, statements allegedly made by FE-5. (Dkt. No. 149.)

Defendants contacted FE-5, who confirmed that he spoke with Plaintiffs' representatives, but

disagreed strongly with the FAC's characterization of that conversation and disavowed that he had ever made the key statements that the FAC attributes to him. (Declaration of Claire A. McCormack ("McCormack Decl.") ¶ 4; Ex. A ¶¶ 5–12.) FE-5 reported that (i) Plaintiffs' counsel never sent him a copy of the FAC to review prior to the filing of that document; and (ii) because they did not, he did not have the opportunity to review for accuracy the allegations attributed to him before the FAC was filed. (Ex. A ¶ 13.) Now, having had the opportunity to review those allegations, he has sworn under penalty of perjury that the FAC mischaracterizes his statements. (*Id*. ¶¶ 5–12.)[1] Most notably, FE-5 states in his declaration:

- He never met with NVIDIA's CEO in 2017, as alleged in the FAC—he met with him in 2015, and cryptocurrency was not a topic of that meeting (Ex. A ¶ 10);
- He has never heard of GeForce Experience ("GFE") being used for mining or of any GFE reports that could identify sales to miners (*Id*. ¶ 6); and
- Sell-in/Sell-out data does not identify end-users, so he does not know how it could be used to determine sales to crypto-miners (*Id*. ¶ 11).

Defendants promptly informed Plaintiffs that FE-5 disavowed the key statements attributed to him in the FAC and asked Plaintiffs to withdraw those allegations. (Ex. B.) Plaintiffs responded with a letter contesting FE-5's recollection of his interactions with their investigators and suggesting that his statements to Defendants were motivated by fear of retaliation by NVIDIA or others in the industry. (Ex. C.) In doing so, they pointed to an email exchange between FE-5 and Plaintiffs' counsel dated May 28, 2020. (*Id*.) That email is attached to the McCormack Declaration as Exhibit D.

Defendants now move this Court to strike the disavowed and, thus, wholly unsupported, allegations identified in their Notice of Motion and Motion to Strike. While such a motion is unusual, the facts here compel such a response. A substantial portion of the allegations that Plaintiffs added to their new complaint, in an effort to survive the motion to dismiss they now face, have been completely

---

[1] Given that FE-5's name has not been publicly disclosed, Defendants have not included his name in this motion or in the McCormack Declaration, thus allowing those documents to be filed without any sealing issues and ensuring the greatest transparency possible while maintaining his anonymity. Defendants have, however, conditionally filed under seal FE-5's signed declaration and other documents that contain his name. *See* Defendants' Administrative Motion to File Under Seal Exhibits attached to the McCormack Declaration filed concurrently.

1   disavowed by FE-5. And he has done so under oath. The very purpose of the PSLRA would be thwarted if this case were allowed to proceed based in whole or in part on such allegations. *Nguyen v. Endologix, Inc.*, 2020 WL 3069776, at *8 (9th Cir. June 10, 2020) (acknowledging the heightened pleading standard under the PSLRA, which reflects "Congress's attempt to halt early on securities litigation that lacks merit or is even abusive"); *see also* S. REP. NO. 104-98, at 42–43 (1995) (finding that discovery in securities fraud litigation "account[s] for roughly 80% of total litigation costs."). It would also run afoul of the well-established rule in the Ninth Circuit that securities plaintiffs cannot meet the heightened pleading requirements of the PSLRA by relying on facts and statements attributed to unnamed witnesses absent a showing that such witnesses were in a position to know the information attributed to them, that the allegations are reliable, and, to the extent the allegations are used to support an inference of scienter, that they do just that. *Zucco*, 552 F.3d at 995. Defendants respectfully submit this is one of those unusual circumstances in which the Court should find the allegations lack the required reliability as a matter of law.

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded . . . 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). In the Ninth Circuit, immaterial or impertinent matter may be stricken if it would be prejudicial to the moving party, would cause delay, or confuse the issues. *See id.* at 1528 (upholding motion to strike where district court "correctly noted that the [disputed] allegations created serious risks of prejudice to [defendant], delay, and confusion of the issues"). Ultimately, "[d]ecisions to grant motions to strike lie within the discretion of the court." *Dena' Nena' Henash, Inc. v. Oracle Corp.*, 2007 WL 1455905, at *10 (N.D. Cal. May 16, 2007).

## IV. ARGUMENT

### A. Allegations Attributed to FE-5 Should Be Stricken as Immaterial and Impertinent.

In the securities fraud context, courts in the Ninth Circuit must determine whether allegations by confidential witnesses are sufficiently reliable to warrant consideration. *Zucco*, 552 F.3d at 995. Where a confidential witness disavows allegations attributed to him, courts have found those statements to be unreliable under the PSLRA. *See Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1038–39 (N.D. Cal. 2012) (finding CW statements unreliable due, in part, to the "inconsistency in the [witness's] statements"). Allegations that lack "indicia of reliability" are considered immaterial, and courts may appropriately strike such allegations under Rule 12(f). *See Porter v. Fairbanks Capital Corp.*, 2003 WL 21210115, at *7 (N.D. Ill. May 21, 2003) (striking exhibit attached to complaint partly because "it has no indicia of reliability").

Here, FE-5's declaration negates any indicia of reliability for the allegations attributed to him in the FAC. For example, the FAC alleges that "FE 5 stated that the usage data contained in these GFE reports showed that over 60% of GeForce GPU sales during the Class Period were to miners." (FAC ¶ 106.) Yet, in his sworn declaration, FE-5 could not be clearer: "This statement is false." (Ex. A ¶ 8.) In fact, he does not know of "any GFE reports that could show that any percentage of sales were to miners." (*Id.*)

Similarly, the FAC asserts that "FE 5 recalled personally presenting sales data to Mr. Huang at a meeting in 2017." (FAC ¶ 91.) But according to FE-5's sworn declaration, he only met with Mr. Huang once—in 2015. (Ex. A ¶ 10.) He never met with Mr. Huang in 2017, and he never told Plaintiffs that he did. (*Id.*) FE-5 does recall, however, specifically telling Plaintiffs that cryptocurrency was *not* a subject of his one meeting with Mr. Huang in 2015. (*Id.*) That, of course, should come as no surprise, as the mining demand at the center of the FAC did not materialize until 2017. Plaintiffs' allegations are clearly intended to suggest that FE-5 saw sales data that showed 60% of GeForce GPU sales were going to crypto miners and he presented that sales data to Huang in 2017. But neither allegation could be considered reliable in light of FE-5's declaration. Indeed, neither is

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

DEFENDANTS' NOTICE OF MOTION AND MOTION TO
STRIKE ALLEGATIONS IN PLAINTIFFS' FAC
CASE NO. 4:18-CV-07669-HSG

true.[2]

Given the dictates of the PSLRA and the clear disavowal by FE-5 of the key allegations attributed to him, Defendants believe that they had no choice but to seek this relief. And, though unusual, it is not without precedent. *See Campo*, 371 F. App'x. at 216–17 & n.4 (affirming lower court's refusal to consider disavowed CW allegations in ruling on a motion to dismiss); *see, e.g.*, *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 2011 WL 824604, at *4–5 (N.D. Ill. Mar. 7, 2011) (relying on CW deposition testimony and affidavit disavowing statements attributed to him and finding that this information "should not only have been steeply discounted, it should not have been considered at all"), *vacated in part on other grounds*, 711 F.3d 754 (7th Cir. 2013); *Applestein*, 861 F. Supp. 2d at 1038 (finding CW statements unreliable due, in part, to the "inconsistency in the . . . [witnesses'] statements"); *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1220–22, 1227 (N.D. Ga. 2012) (granting motion to dismiss on reconsideration based, in part, on CW's disavowal of allegations attributed to him in the complaint).

Plaintiffs may point the Court's attention to the May 28, 2020, email attached as Exhibit D to the McCormack Declaration and argue that it somehow undercuts this motion. But it does not. What the email shows is that FE-5 never had the opportunity to review the FAC prior to May 28 and that he was angered by the fact that he could be identified based upon the description used in the FAC, despite apparent promises of anonymity. No one should be surprised by such a reaction, and it is not at all inconsistent with his declaration. The fact that he did not go on to address the veracity of the nearly two dozen paragraphs referencing him in the FAC does not change this analysis, and certainly does not suggest an endorsement of those allegations. At bottom, FE-5 has sworn under oath, unequivocally, that he did not make the key statements attributed to him in the FAC.

Because FE-5 squarely disavows key allegations attributed to him, those allegations are unreliable.[3] As such, this Court should strike the disavowed allegations as immaterial and impertinent

---

[2] *See* FE-5's Declaration, attached as Exhibit A to the McCormack Declaration, for additional statements that FE-5 disavows.

[3] Striking the disavowed allegations is proper where, as here, the failure to do so would prejudice the Defendants and lead to delay. *Fantasy, Inc.*, 984 F.2d at 1528. Defendants and the Court should not be required to direct time and resources analyzing discredited allegations.

under Rule 12(f).

### B. The Court May Consider FE-5's Declaration in Deciding Defendants' Motion to Strike.

The Court may consider FE-5's declaration in deciding Defendants' Motion to Strike as Defendants seek only to introduce the declaration for the "limited purpose" of assessing the reliability and evidentiary value of the FE-5 allegations. *See Campo*, 371 F. App'x. at 216 n.4. For example, in *Campo v. Sears Holdings Corp.*, the Second Circuit found no error in the trial court's "reli[ance] upon the deposition testimony [in the motion to dismiss stage] for the limited purpose of determining whether the confidential witnesses acknowledged the statements attributed to them in the complaint." *Id.*; *see also City of Livonia Emps.' Ret. Sys*, 2011 WL 824604, at *5 (relying on confidential witness deposition testimony and affidavit disavowing statements attributed to him and finding that this information "should not only have been steeply discounted, it should not have been considered at all"); *Belmont Holdings*, 896 F. Supp. 2d at 1220–23 (considering CW declaration in reconsidering and reversing court's order denying defendants' motion to dismiss). *But cf. Union Asset Mgmt. Holding AG v SanDisk LLC*, 227 F. Supp. 3d 1098, 1100-01 (N.D. Cal. 2017) (declining to consider recanting declaration submitted as grounds for request for dismissal with prejudice in ruling on whether to grant leave to amend securities fraud complaint).

### V. CONCLUSION

For all the reasons stated above, Defendants respectfully request that the Court grant Defendants' motion to strike from the FAC the allegations identified in the Notice of Motion, *supra*.

Dated:   June 29, 2020                COOLEY LLP


                                      /s/ John C. Dwyer
                                      John C. Dwyer (136533)

                                      Attorneys for Defendants
                                      NVIDIA CORPORATION, JENSEN
                                      HUANG, COLETTE KRESS and JEFF FISHER

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8

DEFENDANTS' NOTICE OF MOTION AND MOTION TO
STRIKE ALLEGATIONS IN PLAINTIFFS' FAC
CASE NO. 4:18-CV-07669-HSG